**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE HASKELL COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1110 (RMC) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*,) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This FOIA[1] case involves the appeal of a search-and-copy fee imposed by the Federal

Bureau of Prisons ("BOP") prior to BOP's initiation of a search for a very large number of old

documents sought by McGuireWoods LLP, apparently on behalf of The Haskell Company, plaintiff

here.  BOP and Alberto Gonzales, sued in his official capacity as Attorney General, ("Defendants")

move to dismiss.  Defendants argue that the Plaintiff failed to exhaust its administrative remedies

and that BOP's fee estimate for the search and copying was not arbitrary and capricious.  The Court

finds that Plaintiff has no standing to pursue this case inasmuch as it was not the requester.  The

complaint will be dismissed.

## I.  BACKGROUND FACTS

McGuireWoods LLP ("McGuireWoods") is a law firm located, among other places,

_____

[1]  Freedom of Information Act ("FOIA"), 5 U.S.C. § 701 *et seq.*

in Jacksonville, Florida.  It electronically submitted a FOIA request to the BOP on March 18, 2004.[2]

It sought twelve distinct document types concerning Federal Correctional Institute ("FCI") Yazoo

City, which comprises two facilities, identified by the law firm as the "Older Facility" and the

"Newer Facility."  Each individual record type that McGuireWoods requested could involve large

numbers of documents.[3]  By letter dated May 13, 2004, BOP responded that the voluminous request

would involve a "lengthy search for responsive documents" requiring 2,950 search hours, resulting

in estimated search fees of $82,600 and reproduction fees of $1,000.  BOP invited McGuireWoods

to discuss ways to narrow its request.  It further advised that no action would be taken on the search

_____

[2]  The facts are taken from the Declaration of Ruthlee Gowins ("Gowins Decl.") and its attachments ("Att.").

[3]  The March 18, 2004, request asked for: "1) Any and all soil reports or soil information of any kind relating to either of the above facilities; 2) Any and all geotechnical reports relating to either of the above facilities; 3) Any and all Requests for Proposals relating to either of the above facilities; 4) All correspondence, memoranda, transmittals or electronic mail to or from any contractor regarding the soils, at either of the above facilities; 5) All correspondence, memoranda, transmittals or electronic mail to or from any contractor regarding rain or weather delays at the Older Facility; 6) All correspondence, memoranda, transmittals or electronic mail to or from any third party regarding differing site conditions, weather delays, changed conditions, muddy conditions or claims based on soil conditions related to the Older Facility; 7) Any and all correspondence, memoranda, transmittals or electronic mail to or from Construction Management Support Services, including but not limited specifically to W.G. Yates and Sons Construction Company relating to the soils at either of the above facilities; 8) Any and all change orders granting extensions for [sic] time for differing site conditions, changed conditions, weather delays, muddy conditions or soil conditions related to the Older Facility; 9) Any and all change orders granting additional compensation for differing site conditions, changed conditions, muddy conditions or claims based on soil conditions related to the Older Facility; 10) Any and all design documents related to or referencing the soils at either of the above facilities; 11) Any and all memoranda, handwritten notes or e-mails referencing or related in any way to any claims made by any contractor concerning soils at either of the above facilities, including claims based on differing site conditions, changed conditions, muddy conditions or claims based on soil conditions; 12) Any and all bids submitted on either of the above facilities including but not limited to all bid correspondence, bid reviews or bid analysis or Federal Bureau of Prison Estimates of cost of the work."  Gowins Decl., Att. A. Counsel for the Plaintiff asked that this request be handled on an expedited basis.  *Id.*

-2-

or copying of documents until the law firm paid the fees in advance or narrowed its request.  By

return letter dated June 11, 2004, McGuireWoods requested no further action on its request.

McGuireWoods submitted a narrowed document request on July 7, 2004.  This time

it sought ten different document types.[4]  BOP responded by letter dated October 20, 2004, estimating

fees for the search for responsive documents at $43,400.00 and $700.00 in duplication fees.[5]  The

estimated search time was lowered to 1,550 hours.  BOP again advised that McGuireWoods might

discuss a more narrow scope of its request and that it would not initiate any search until the law firm

either narrowed the request or paid the estimated fees.

McGuireWoods responded on November 9, 2004, arguing that the hours estimated

for the search was "extremely unreasonable."  Gowins Decl. Att. F.  It requested "[a] listing of the

volume of documents.  The volume of documents can be stated either by reference to the number of

boxes or the number of file drawers."  *Id.*  It also asked for a "[s]tatement of the number of hours that

the FBOP anticipates for each individual request" so that the law firm could determine how BOP

---

[4]  In its July 2004 FOIA request, the Plaintiff requested: "1) Any soil reports or geotechnical reports prepared for the construction of the Older Facility.  These requested reports are the reports prepared for the owned by a geotechnical firm prior to construction.; 2) Requests for Proposals prepared by or on behalf of the Federal Bureau of Prisons ('FPOP') concerning the construction of the Older Facility; 3) Any claims submitted by the contractor who constructed the Older Facility.  This includes any claims based on differing site conditions; 4) Any time extensions or change orders related to weather delays granted to the contractor who constructed the Older Facility; 5) Any bids or proposals submitted by contractors on either of the above facilities; 6) Any analysis performed by FBOP related to bids submitted on the Older Facility; 7) Any analysis performed by FBOP related to bids submitted on the Newer Facility; 8) Any questions received from any bidder (proposer) on the Older Facility; 9) Any questions received from any bidder (proposer) on the Newer Facility; 10) Copies of electronic photographs depicting the construction of either of the facilities.  This request is only for copies of photographs that are stored electronically and is <u>NOT</u> a request for paper copies of photographs."  Gowins Decl. Att. D, Ex. A.

[5]  Any excess charged over the actual cost would have been refunded.  Gowins Decl. ¶ 12.

calculated the necessary hours. *Id.* "As an alternative," McGuireWoods offered to review the documents personally "at your location." *Id.* BOP did not answer this letter before the law firm filed, on December 17, 2004, an appeal of the BOP "decision dated October 20, 2004" which "effectively denied our request." Att. G.

Citing *National Treasury Employees Union v. Griffin*, 811 F.2d 644 (D.C. Cir. 1987), McGuireWoods argued in its appeal that "[c]ourts have only upheld seemingly high estimate search fees where agencies have fully substantiated such estimates and rebutted the presumption that such fees are exorbitant." *Id.* It asked for four remedies:

1.   Provide us with an estimated number of boxes and/or file drawers to be searched for responsive documents; and

2.   Provide us with an estimate for the amount of time it would take the FBOP to answer each individual request; and

3.   Permit us to perform the review at the FBOP at a mutually agreed upon time and place; or

4.   Discuss with us how the FBOP substantiated its estimated search fees for the purpose of allowing us to reformulate our request to meet our needs at a lower cost.

*Id.* When no response was received, The Haskell Company filed this suit on June 3, 2005. On July 12, 2005, the administrative appeal was closed by BOP because suit had been filed.

## II. ANALYSIS

This case must be dismissed because The Haskell Company has no standing to sue BOP over that agency's handling of a FOIA request submitted solely by McGuireWoods. *See McDonnell v. United States*, 4 F.3d 1227, 1236-37 (3d Cir. 1993) (holding that "a person . . . whose name does not appear on a FOIA request for records may not sue in district court when the agency

-4-

refuses to release requested documents because he has not administratively asserted a right to receive them in the first place"); *Three Forks Ranch Corp. v. The Bureau of Land Management*, 358 F. Supp. 2d 1, 3 (D.D.C. 2001) (noting that "an attorney must adequately identify that he is making the FOIA request for his client in order for the client to have standing to pursue a FOIA action"); *Maxxam, Inc. v. Federal Deposit Insurance Corporation*, No. 98-0989, 1999 WL 33912624, at *2 (D.D.C. Jan. 29, 1999) (holding that "plaintiff's attorney [who submitted the FOIA request], but not plaintiff, is the real party-in-interest to this suit").   Nowhere in its correspondence with BOP did McGuireWoods identify The Haskell Company as an interested party or co-requester.  Having not made a request, The Haskell Company cannot complain of how it was handled; it did not "administratively assert a right" to receive the requested documents in the first place.  In sum, The Haskell Company does not have standing to bring this suit; it is not the real party in interest. Defendants' motion to dismiss will be granted.

### III.  CONCLUSION

Accordingly, Defendants' motion to dismiss [Dkt. 7] will be granted, and this case will be dismissed.  A memorializing order accompanies this memorandum opinion.


_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: March 13, 2006